OSCN Found Document:KELLEY v. STATE ex rel. DEPT. OF PUBLIC SAFETY

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 KELLEY v. STATE ex rel. DEPT. OF PUBLIC SAFETY
2015 OK CIV APP 60
350 P.3d 429
Case Number: 113021; Consol. w/113022
Decided: 05/14/2015
Mandate Issued: 06/10/2015
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2015 OK CIV APP 60, 350 P.3d 429

 

CARRIE FAYE KELLEY, Plaintiff/Appellant,
v.
STATE OF 
OKLAHOMA ex rel. DEPARTMENT OF PUBLIC SAFETY, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
MUSKOGEE COUNTY, 
OKLAHOMA
HONORABLE MIKE NORMAN, TRIAL JUDGE

REVERSED

Brian K. Morton, EDGE LAW FIRM, Tulsa, Oklahoma, for 
Plaintiff/Appellant
Joanne Horn, OKLAHOMA DEPARTMENT OF PUBLIC SAFETY, 
Oklahoma City, Oklahoma, for Defendant/Appellee


P. THOMAS THORNBRUGH, JUDGE:
¶1 In this consolidated appeal, Carrie Kelley and Arthur Kelley seek review 
of the decisions of the district court affirming the revocation of their 
respective driver's licenses for driving with a blood alcohol concentration in 
excess of 0.08 g/dL. On review, we reverse both decisions because the Department 
of Public Safety (DPS) failed to show at trial that the requirements of 47 O.S.2011 § 754(F) were met in 
this case.
BACKGROUND
¶2 Carrie Kelley's vehicle was stopped by an officer of the Muskogee Police 
Department late in the night of July 12, 2011, or early in the morning of July 
13. The Officer (Jenkins) stated that he observed Carrie Kelley speeding in a 
construction zone, and that she appeared intoxicated after being stopped. Arthur 
Kelley, Carrie Kelley's husband, was also driving that night, and observed 
Carrie being stopped. Arthur Kelley turned around and stopped, and approached 
Officer Jenkins. Officer Jenkins testified that Arthur Kelley smelled of alcohol 
and appeared intoxicated. The Kelleys were both detained, and taken to the local 
hospital for blood testing, because the Police Department's breath alcohol meter 
was out of commission. The parties dispute the details of the interaction 
between Officer Jenkins and the Kelleys, and dispute whether the Kelleys 
requested a second, independent test of their blood pursuant to 47 O.S.2011 § 751(E). The blood 
tests indicated that both Kelleys had blood alcohol levels in excess of the 
legal maximum 0.08 g/dL.
¶3 The Kelleys requested an administrative hearing on the revocations, which 
were affirmed. The Kelleys then appealed to the district court. The two cases 
were tried together on December 4, 2012. The issues were the same in each case. 
The district court upheld the revocations, but, for reasons unknown, the court's 
decision was not reduced to an appealable order until June 12, 2014. Carrie 
Kelley and Arthur Kelley appealed separately, and the two appeals were 
consolidated by the Supreme Court.
STANDARD OF REVIEW
¶4 On appeal from an order of an implied consent revocation, an appellate 
court will not reverse the district court's findings unless the order is 
erroneous as a matter of law or lacks a sufficient evidentiary foundation. 
Hollis v. State ex rel. Dept. of Pub. Safety, 2006 OK CIV APP 25, ¶ 4, 131 P.3d 145.
ANALYSIS
¶5 The issues are the same in the two consolidated cases, and the Kelleys 
raise three propositions of error. However, we need only address the first 
proposition - i.e., that the requirements of 47 O.S.2011 § 754(F) were not met 
in this case - as we find this issue dispositive.
I. TITLE 47 - THE "IMPLIED CONSENT" INQUIRY.
¶6 Title 47 O.S.2011 § 
754(F)(1) establishes the inquiry that was required in this case:

 
 1. If the revocation or denial is based upon a breath or blood test 
 result and a sworn report from a law enforcement officer, the scope of 
 the hearing shall also cover the issues as to whether:
 a. if timely requested by the person, the person was not denied a breath 
 or blood test,
 b. the specimen was obtained from the person within two (2) hours of the 
 arrest of the person,
 c. the person, if under twenty-one (21) years of age, was advised that 
 driving privileges would be revoked or denied if the test result reflected 
 the presence of any measurable quantity of alcohol,
 d. the person, if twenty-one (21) years of age or older, was advised that 
 driving privileges would be revoked or denied if the test result reflected 
 an alcohol concentration of eight-hundredths (0.08) or more, and
 e. the test result in fact reflects such alcohol concentration. (Emphasis 
 added.)
¶7 At trial, DPS apparently argued that an arresting officer is not required 
to give the appropriate warnings noted in subsections (c) or (d) of § 754(F)(1) 
before an alcohol test.[1] We interpret the legislative command that the "scope 
of the hearing shall also cover," followed by a list of conditions, as 
requiring that the listed conditions of § 754(F)(1) be established as 
true. This includes a finding that the appropriate warnings stated in 
subsections (c) or (d) were given. The Legislature clearly required these 
warnings, and we find no indication that anyone except the arresting officer is 
in a position to give them. We reject any argument that the warnings are not 
required in some statutorily compliant form.
¶8 Plaintiff Arthur Kelley testified that he was not read these statutory 
warnings.[2] 
Officer Jenkins testified that he read Kelley the contents of his "implied 
consent" card. Under other circumstances, this would be a simple credibility 
question upon which we would defer to the district court. However, in this case, 
there is a more fundamental problem. Proceeding from the position that Officer 
Jenkins did read the Kelleys the contents of his "implied consent" card, DPS 
did not introduce the "implied consent" card into evidence. It also did not 
elicit testimony from Officer Jenkins as to the card's contents, or ask if he 
gave the warning required by § 754(F)(1)(d). Neither this Court, nor the 
district court, may assume what information was on Officer Jenkins' card. 

¶9 Section 754(F) is clear that the listed elements must be established in a 
civil revocation proceeding. The law requires no more than this, but it requires 
no less. See Abdoo v. State ex rel. Dep't of Pub. Safety, 1990 OK CIV APP 2, ¶ 9, 788 P.2d 1389 (implied consent 
statutory scheme imposes no duty on officer to inform the person charged of the 
actual period of revocation). A statement that the officer "read the card" is 
insufficient to establish the requirements of § 754(F) unless accompanied by 
some evidence or testimony as to the contents of the card. We therefore reverse 
the district court's order affirming the Kelleys' suspension.
CONCLUSION
¶10 We find no error in the procedure followed by the officer on the scene. 
However, § 754(F) is clear that the listed statutory elements of proof must be 
established in a civil revocation. This requirement can be satisfied by the 
simple expedient of entering a copy of the card used by the officer into 
evidence at trial, coupled with testimony that the officer read the contents of 
the card to the party whose license is revoked. In this case, this was not done. 
Consequently, we must reverse the decision of the district court as to both 
Carrie Kelley and Arthur Kelley.

¶11 REVERSED.

RAPP, P.J., and BARNES, J., concur.

FOOTNOTES

[1] 
See trial transcript, pp. 43-44, where DPS counsel stated that she is 
"not aware" of any law that requires the warnings of an "informed consent" card 
to be read to a driver. Section 754(F) clearly requires that the driver 
"was advised that driving privileges would be revoked or denied if the test 
result reflected an alcohol concentration of eight-hundredths (0.08) or more." 
The warning is required by statute, whether the officer "reads it from the card" 
or recites it from memory.

[2] Counsel 
for the Kelleys, in response to the trial court's inquiry, stipulated that 
Carrie Kelley's testimony would be the same as that of her husband. Transcript 
at pp. 47-48.





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1990 OK CIV APP 2, 788 P.2d 1389, 61 OBJ 964, Abdoo v. State ex rel. Dept. of Public Safety
Discussed
 2006 OK CIV APP 25, 131 P.3d 145, HOLLIS v. STATE ex rel. DEPT. OF PUBLIC SAFETY
Discussed
Title 47. Motor Vehicles
 Cite
Name
Level

 47 O.S. 751, Implied Consent to Breath, Blood, or Other Test for Determining Concentration of Alcohol or Other Intoxicating Substance
Cited
 47 O.S. 754, Surrender or Seizure of License - Receipt as Temporary License - Revocation or Denial of Driving Privilege - Hearing
Discussed at Length